NANNIE OLMSTEAD v. A. W. HOY, Appellant.

**Express Contract to Marry:**   WHEN JURY QUESTION.   Plaintiff alleged an express contract to marry, but did not base the promise upon any particular letter, oral promise or act.   Defendant claimed that his verbal offer was answered by a letter which was but a conditional acceptance.   Plaintiff testified that said letter was an unconditional acceptance.   There was testimony that, subsequent to said letter, the parties agreed to be married at a certain time.   *Held*, it was proper to submit to the jury whether there had been an express contract to marry even though it be assumed that said letter was but a conditional acceptance.

INSTRUCTIONS.   Plaintiff alleging an express agreement, to instruct that a contract to marry might be established by implication was not erroneous because it permitted the jury to find an implied agreement, where the jury were also instructed that plaintiff could only recover on proving an offer and acceptance.

SAME.   Where plaintiff alleged an express agreement, and defendant claimed her acceptance of his offer to have been conditional, it was proper to submit to the jury defendant's constant attention to plaintiff, for their consideration in determining whether there was an express contract, and whether it was conditional or unconditional.

SAME:   *Charge and proof.*   Where there was undisputed evidence that it was understood for a long time by the parties' acquaintances that they were engaged, and the evidence tended to show that, because of her relation to defendant, plaintiff withheld herself from the company of other young men, it was not error to charge that the jury might consider, in determining the damages, the length of time the plaintiff and defendant associated with each other, and to what extent to the exclusion of others.

*Same.*   Where there was no evidence as to any sums expended by plaintiff in preparation for marriage, nor any fact from which any amount could be implied, it was error to instruct the jury to consider expense incurred, if any, by reason of the marriage contract.

*Appeal from Marshall District Court.*—HON.  OBED CASWELL, Judge.

WEDNESDAY, OCTOBER 24, 1900.

ACTION to recover damages for a breach of an alleged marriage contract. Verdict and judgment for plaintiff. Defendant appeals.—*Reversed.*

*E. F. Binford* and *Binford & Snelling* for appellant.

*John T. Sullivan* and *T. F. Bradford* for appellee.

GIVEN, J.—I. Plaintiff states her cause of action substantially as follows: That for a long time prior to July 15, 1896, the defendant sought her company, and so conducted himself towards her as to warrant her in believing that it was with a view and purpose of entering into a marriage contract with her, and that because thereof she accepted his attentions to the exclusion of others. That about the fifteenth day of July, 1896, they verbally agreed to be married at whatever time plaintiff was able to make suitable arrangements therefor, and thereafter he continued to visit and correspond with plaintiff until about the middle of November, 1899. That in the latter part of October, 1898, she verbally notified the defendant that she had fixed the time for their marriage for the spring of 1899, and that it was verbally agreed between them that their marriage should take place at that time. That, acting thereon, plaintiff began to make necessary preparations for their marriage, by purchasing many articles. "That on the fifteenth day of November, 1898, the defendant, without any reason or just cause, notified this plaintiff that he was desirous of repudiating and canceling his said marriage contract with her, and that thereafter, on or about the thirtieth of November, 1898, the defendant married another woman." That, during all the time since said contract, plaintiff accepted the attentions and visits of the defendant, to the exclusion of all others. That because of his attentions she became much attached to him, and cultivated a high degree of love and

affection for him, and that by reason of his breach of said contract "she has suffered great pain and mortification and mental anguish," to her damage $10,000, which she asks to recover. The defendant answered as follows: "Admits that he sought plaintiff's company in 1896, and prior thereto; that plaintiff accepted the attentions of this defendant, and that on or about November, 1898, he married another woman. Admits that defendant has paid plaintiff no part of the damages claimed in the petition. Admits that on or about July 15, 1896, this defendant offered to engage himself for marriage to plaintiff, if plaintiff would promise to marry defendant, but plaintiff wanted time to consider said proposition, and afterwards, the latter part of July, 1896, plaintiff refused and rejected said proposition, but proposed to defendant that their social relation continue for an indefinite period, and, if at some indefinite time in the future the plaintiff or defendant did not see any person they liked better, then they should be married. That, in compliance with said proposition, defendant continued his social relations with plaintiff, carrying on the correspondence and visiting plaintiff from time to time as before, until about the fifteenth day of November, 1898, at which time defendant found and saw, in the person of his present wife, a person whom he liked better than plaintiff, whereupon he at once notified plaintiff. That plaintiff refused, and has always refused, to engage herself to defendant, except conditionally, as hereinbefore stated. Defendant, for further answer, denies each and every allegation in the petition not hereinbefore expressly denied or admitted." It will be observed that the action is upon an express contract of marriage, and that the controlling issue is whether the contract was absolute or conditional. The other issues joined by the defendant's denial are whether the spring of 1899 was agreed upon as the time for their marriage; whether plaintiff made preparations therefor; whether she became warmly attached to defendant, and received his attentions to the

exclusion of others; and whether she has been damaged. Defendant's counsel say, and correctly so, that there is but little dispute as to the facts; yet, in view of their contentions, it is necessary that we refer to them in a general way. These young people became acquainted in 1895, and from that time until November 15, 1898, he continued to pay, and she to receive, his addresses as a suitor. In July, 1896, he visited the plaintiff in her home in Minneapolis, and then proposed marriage to her, and she replied that she would give her answer in the course of a week. On July 26th following she wrote him a long letter, the only material part of which relating to his offer is as follows: "I suppose you are anxious to know what my decision is, don't you? I have talked to her, and she was glad, yet somewhat surprised, that we had had a conversation of that sort. She said you were a number one young man, and she liked you, too. You know she has always said, since Jess has left, that I should not go right away, so that it kind of broke her heart to think of my going, but that in course of time, if you or I didn't see any one you like better, she didn't care,—she had no objection. She realizes we are both young, and shouldn't be in a hurry. Don't you think so? You know what I said to you up here about being in a hurry, etc. Now, I trust, A. W., I made myself clear to you, in mamma's view of the matter, so I trust we may keep on corresponding. Hope this is all O. K. You know I told you I had no one else on the string." The defendant answered July 28, 1896; the material part of his answer being as follows: "Dear Nannie: I received your most welcome letter this morning, and was more than happy when I read it. I think you did just what was right, and you know I am pleased at what your parents think of me. I have always tried to act as a gentleman should, and do the right thing, so now (or some day) I shall receive my reward. Don't you think so? At least, you said if I didn't find some one I liked better, which I never shall. If either

of us separates from what we now think, it will be you, and not me, for I never shall as long as I live.  *  *  *  We may fool them some day, if nothing happens.  We may give them a chance to bring their two pounds of rice to throw at us.  But to think of Miss Moon being married! That got away with me.  Tell her that I sent congratulations, and think she kept it rather quiet.  If she could only let us know, we could have bought a glass of red lemonade, and given them a send-off.  *  *  *  Nanna, I feel happy over your decision. I feel that everything will be all O. K. some day.  Don't think for a minute that I ever meant to quit corresponding with you."  Following these letters, he continued his attentions by frequent visits, letters, and occasional presents, including an engagement ring, which he gave her about Christmas, 1896, up to November, 1898, when he wrote her as follows: "Marshalltown, Iowa, November 11, 1898. Dear Friend Nanna: I head this this way, as all I can claim now is friendship.  I have come to the conclusion that a wedding between us would be anything but a happy life.  In fact, I don't think we are intended for one another.  This is one of the hardest tasks I have ever done.  As for myself, I am happy, but I know it will be very hard on you.  This is one thing you may be thankful for: We found it out before it has gone further.  I have no explanation to make, only that we can never be as one.  Hoping you will forget and forgive me, as I know you will live a happier life without me, I remain, A. W. Hoy."  In his letters prior to this, he addressed the plaintiff in most affectionate and endearing terms, and in one written but three days before that of November 11th he addressed her as, "My Darling Nanna," and called her "sweetheart."  The case rests largely upon the testimony of the parties to it, and their correspondence.  Some others were examined as to the defendant's visits, and that it was understood in the family that he and plaintiff were engaged

to marry. Plaintiff's mother testified to an interview with the defendant in November, 1896, in which she consented to the marriage, but expressed the wish that it should not be very soon, because they were both young, and also because of the illness of another daughter, whose illness was thought to be incurable, to all of which she says the defendant consented. The plaintiff testifies that they spoke a great many times about being married; that he said he was ready at any time she was, to get married; that in October, 1898, he asked her to fix the time, and she said she would be ready in the spring of 1899, and he said that was all right, and that he was glad of it. The defendant testified that in November, 1896, he asked her if she was ready to give him a proper answer; that she said she gave her answer in her letter of July 26th. He says that there never was any promise between them to be married, except as contained in that letter; that he never asked her to fix a time for their marriage; and that she never did propose being married in the spring of 1899. On cross-examination he says, "None of the times that I asked her to fix the time of our marriage was close to the time of the death of her sister."

II. The defendant contends that, as this action is upon an express contract, the plaintiff cannot recover upon an implied contract, and insists that the only evidence of an express contract is his verbal offer made July 15, and her written answer of July 26, 1896, and that therefore it was for the court to determine whether the offer and answer constitute an express contract, and, if so, whether it is absolute or conditional, and that the court erred in submitting those questions to the jury. True, the plaintiff avers an express contract, but not upon said verbal offer and written answer as constituting it. They are not set out nor referred to in the petition. The petition not only declares that they verbally agreed on the fifteenth of July, 1896, to marry, but also that in the latter part of October, 1896, it was mutually understood and verbally

agreed that their marriage should take place in the spring of 1899. The plaintiff testifies that she accepted his offer in her letter. Conceding that her acceptance was conditional, she had a right, under her petition, to show that thereafter they expressly agreed, unconditionally, to be married. Said offer and answer are not the only evidence tending to show an express agreement. They are not conclusive on the question whether there was an express, unconditional agreement, yet proper to be considered in determining that issue. There was no error in submitting the question of express contract to the jury.

III. Still assuming that said verbal offer and written answer are the contract declared upon and proven, defendant complains of certain of the instructions. The assumption being incorrect, as we have seen, the complaints are not well founded. It is complained that in the fourth instruction the court told the jury that contracts to marry may be established by implication. In conveying to the jury the thought that contracts to marry may be established like other contracts, the court said that they may be implied from circumstances proven. The jury could not have understood from this that they might find for the plaintiff on an implied agreement to marry, for in the next instruction they were plainly told that the plaintiff could only recover on proving an offer and acceptance. The undisputed fact of defendant's constant attentions was not submitted as a ground from which a contract might be implied, but as proper to be considered in determining whether there was an express contract, and whether it was conditional or unconditional.

IV. In instructing on the subject of damages, the court said: "You may take into consideration the length of time the plaintiff and defendant kept company with each other; to what extent to the exclusion of others; the degree of intimacy existing between them, so far as shown; and all injuries shown to have been sustained by plaintiff,

whether from sorrow or anguish of mind, or mortification to her feelings, blighted affection, or disappointed hopes; also, expenses incurred, if any, by reason of said marriage contract and preparation for the expected, coming marriage, if any shown." Defendant claims that there is no evidence that these parties kept company with each other to the exclusion of others, and that therefore the instruction is erroneous and prejudicial. There is undisputed evidence that it was understood and believed for a long time by their acquaintances generally (especially those of plaintiff) that they were engaged,—a fact that would cause others to forbear from seeking the company of the plaintiff with a view to marriage. The evidence tends to show that, because of her relations to the defendant, the plaintiff withheld herself from the company of other young men. There was no error in this part of the instruction. Under this instruction the jury was authorized to allow expenses incurred by reason of the contract and preparation for the marriage, if any shown. Such expenses are an element of damage, if alleged and proven. Plaintiff alleges that in the spring of 1899 she began preparations for their marriage, and purchased many articles which were necessary, and in her testimony she says: "I was making preparations to be married. He said it was all right,—he was glad of it." This is all the evidence there is on the subject. Not a word as to the amount expended, nor of any fact from which an amount can be implied. It is a familiar rule that it is error to submit to the jury a claim, when there is no evidence to support it. There is no evidence whatever upon which the jury could allow any sum on account of expenses in preparing for the marriage, and therefore that element of damage should not have been submitted. We cannot know what amount the jury allowed, nor whether they allowed any, on account of expenses, and therefore cannot say that the defendant was not prejudiced. For the court to leave it to the jury to say whether any

expense was shown does not remove the error. There being none shown, the court should not have submitted the claim. The defendant raised this question below in his exceptions to this instruction and in his motion for a new trial. For this error the judgment of the district court must be REVERSED.